# W. P. HEDGE, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals. Argued and Submitted February 8, 1912. Opinion Filed March 5, 1912.**

1. **RAILROADS: Action for Assault: Instructions: Failure to Submit Authority of Agent Committing Assault: Nondirection.** In an action against a railroad company for an assault committed by an employee, the defects in an instruction, in so far as it specifically failed to set out the duties of the employee and to specifically charge as to what acts it was necessary to find as evidence of the fact that he was an agent of the defendant, charged with the enforcement of its rules in and about the station where the assault was committed, are matters of nondirection, and are not ground for reversal.

2. **DAMAGES: Assault: Punitive and Compensatory Damages: Excessive Verdict: Railroads.** Where an employee of a railroad company made a brutal and unwarranted attack on a person who was at the station to purchase a ticket to board a train, a verdict of $500 actual and $2500 punitive damages was not excessive.

3. **RAILROADS: Action for Assault: Liability for Acts of Agent.** An employee of a railroad company, charged with the duty of enforcing the company's rules in and about a station, was a special policeman, but he did not receive any compensation from the municipality for his services and never did any duty as policeman except at the station. The company paid him for services rendered. *Held*, that the company was liable for an assault committed by him on a person coming to the station for the purpose of purchasing a ticket to take a train, and that it could not escape liability on the theory that what the employee did he did as a policeman and not as an employee.

4. ————: ————: ————. An employee of a railroad company inspecting and repairing engines moving through a town was frequently at the depot, and discharged the duties of watchman with knowledge of the local agent and officers of the company. The company paid him for his services. *Held*, that the company was liable for an assault committed by him while discharging the duties of watchman.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*E. T. Miller, Moses Whybark* and *A. P. Stewart* for appellant; *W. F. Evans* of counsel.

(1) The peremptory instruction asked by defendant at the close of all the evidence should have been given. The act of the servant for which the master was held liable was not an act within the scope of the servant's employment, in the line of his duty, and relating to the duties of his employment. Hartman v. Muehlbach, 64 Mo. App. 565; Howard v. Railroad, 110 Mo. App. 574; Dickey v. Dickey, 111 Mo. App. 304; Long v. Nute, 123 Mo. App. 204; Cousins v. Railroad, 66 Mo. 572; Milton v. Railroad, 193 Mo. 46; Jardine v. Cornell, 50 N. J. L. 485, 14 Atl. 590; Railroad v. Keely, 177 Fed. 189; McKain v. Railroad, 64 S. E. 18, 23 L. R. A. (N. S.) 289; Railroad v. Ponder, 60 L. R. A. 713; 2 Woods Railway Law, sec. 1212; 3 Elliott on Railroads, sec. 1265. (2) The court erred in giving plaintiff's instruction number 1. This instruction made the jury the judges of the law as well as of the facts. The court should have stated the law and left to the jury only questions of facts for their consideration. The instruction was further erroneous in that its tendency was to mislead and confuse the jury. Allen v. Transit Co., 183 Mo. 411; Neff v. Cameron, 213 Mo. 350; Ayers v. Railroad, 124 Mo. App. 422; Harrison v. Franklin, 126 Mo. App. 366; State ex rel. v. Allen, 132 Mo. App. 98. (3) The court erred in giving plaintiff's instruction number 2. The instruction is misleading and is calculated to, and did evidently, mislead the jury. See authorities cited under point 1. (4) The court erred in giving plaintiff's instruction number 3. This instruction also permitted the jury to construct its own standard as to what constituted a cause or excuse for the alleged act of defendant Brownfield. See authorities cited under point 1. (5) The verdict is excessive and bears no relation to the injuries sustained. It is also grossly excessive in respect of punitive damages.

*Ward & Collins* for respondent.

(1) Brownfield was the servant of appellant; it selected him, it paid him, it controlled him, it prescribed his duties, and these duties pertained to their property and interests, and he was subject to discharge by it. Hence, by every recognized and controling test and definition, the relation of master and servant existed. Phillips v. Mfg. Co., 129 Mo. App. 396; Bishop on Non-Contract Law, sec. 599; Wood's Master and Servant, secs. 1, 317, and note 1; Cooley on Torts, 531; 1 Parsons on Contracts 101; 1 Lawson's Right, Remedies and Practice, sec. 294; Mound City, etc., Co. v. Conlon, 92 Mo. 221; Brill v. Eddy, 115 Mo. 596. (2) The acts complained of were within the scope of the employment of Brownfield as the servant of appellant, and in the line of his prescribed duties while he was about his master's business and furthering his master's ends, and, hence, the rule of *respondeat superior* would apply. Whether the master directly authorized the act or not, or was or was not privy thereto, if it placed its agent or servant in a place to do a certain class of acts or accomplish a certain end it is responsible for the means and methods and discretion of the servant employed and used to accomplish the expected results. Appellant set in motion the agency that produced the mischief and is liable. Garretzer v. Duenckel, 50 Mo. 104; Wood on Master and Servant, p. 561; Whitehead v. Railroad, 99 Mo. 270; Harriman v. Stowe, 57 Mo. 98; Morgan v. Bowman, 22 Mo. 538; Douglas v. Stephens, 18 Mo. 362; Minter v. Railroad, 41 Mo. 503. (3) The contention of appellant that Brownfield was a special policeman does not militate against respondent's right of recovery, because a police officer may be a civil agent. Gerhardt v. Savings Institution, 38 Mo. 60; Daily v. Bank, 56 Mo. 102; Wood on Master and Servant, p. 542; Wood on Master and Servant, sec. 459, p. 553;

1 Am. and Eng. Railroad Cases, 571. (4) Instructions given on behalf of respondent are well enough, based upon the evidence adduced at the trial, and fairly and properly declare the law of the case. Such instructions have repeatedly met the approval of the appellate courts of this state. Tangner v. Railroad, 85 Mo. App. 28; Sonnen v. Trans. Co., 102 Mo. App. 271; O'Donnell v. Trans. Co., 107 Mo. App. 34.

STATEMENT.—Plaintiff, an old man about seventy-two years of age and in rather feeble health, weighing a little under a hundred pounds, about two o'clock on the morning of the 17th of December, 1909, started for the station of defendant railroad company at Hayti, in Pemiscot county, for the purpose of purchasing a ticket, intending to go as a passenger on the train of defendant from Hayti to Caruthersville, the train being due to leave Hayti a few minutes after four o'clock that morning. Upon reaching the vicinity of the station, he did not go into it immediately but going across the railroad track of defendant, went into a restaurant, where he remained for a short time. From the restaurant he went out to a closet situated on the railroad Y, and while returning from the closet and walking along the Y, he was accosted by defendant Brownfield, a young man about twenty-nine years old and weighing about 190 pounds, and something over six feet high.

According to plaintiff's testimony, as he came out of the closet and was walking along the track, he saw defendant Brownfield coming along with a lantern and a billy in his hand. Plaintiff was then about sixty yards from the station. Brownfield walked up to him, turned the lantern on his face and said, "What are you doing here?" Plaintiff answered that he had come to go on the train when it came in. Whereupon Brownfield said, "I know you. You live here in town. You go home or I will lock you up,"

to which plaintiff answered that he was there on business, was going to Caruthersville. Whereupon Brownfield grabbed hold of him and he fell down and his face struck on the edge of the silica on the railroad bed. Plaintiff got up, Brownfield gave him another jerk and then took him by the arm and swore he was going to lock him up; that he had to go home; "said he wouldn't stand for us 'natives' to do that." Plaintiff said to him, "Well, nobody has done anything to you;" that at least he had not. Brownfield called him a liar and plaintiff said he did not like to take that. After they reached the station plaintiff said he was going in to sit down; that he was hurt. Whereupon Brownfield said that he was not going into the depot unless he had a ticket. Plaintiff told him he did not have a ticket but had the money to get one. Brownfield repeated to him that he should go home, and plaintiff said, "No, sir; I am going off on that train when it comes," and Brownfield said that he would get him a ticket. Plaintiff said that would be all right, if that would settle it; that he would "just as leave buy one now as any time." They went to the station and Brownfield went to the ticket window and called for a ticket. Plaintiff asked for a ticket to Caruthersville and back. Brownfield was standing behind him at the time and struck plaintiff with something so that his chin went down on the window sill; struck him on the back of the neck. The agent gave him the ticket and the change and he put the change in his pocket and went to put the ticket in his pocket and said to Brownfield, "What did you hit me for?" and Brownfield hit him and landed him about ten feet from where he was standing, and he struck his breast against the iron on the seat in the waiting room. He got up on his feet and Brownfield came to him and threw him on the floor. Plaintiff got up on his hands and knees and said to Brownfield that he would attend to his case for doing him that way. Whereupon

Brownfield drew his billy and plaintiff said he was not afraid of anything, "but please don't say any more, you have hurt me," and asked Brownfield to go away and let him alone. Brownfield cursed and abused him and said that he would show him and came up to him and threw him and struck him on the hip. Plaintiff got up on his feet and Brownfield caught hold of him and threw him back on the seat and pulled a pair of steel nippers out of his pocket and put them on plaintiff's wrist and wrenched it so that it hurt. Plaintiff told Brownfield he was hurting him and asked him what he wanted to treat him that way for; that he was old and sick, and Brownfield said he was going to lock him up, and took him out of the station, dragged him down on the track about seventy-five yards, stopping and wrenching the nippers around which he kept on his arm all the time from the time he put them on, and Brownfield wanted him to promise that he (plaintiff) would not say anything about it, saying to him, "You promise me you will go back and sit down and not say anything about this and I will turn you loose." Plaintiff said that he would not promise him anything; that he was hurt. Brownfield then turned him loose and plaintiff followed him back down and sat for a while in the restaurant, getting some pins to pin up his clothes, Brownfield having torn the buttons off of his shirt. Plaintiff had known Brownfield as a man who was working around the station for the railroad; knew he was in the employ of the railroad but did not know his name until the day before this transaction. Brownfield told him that he was employed about the railroad to keep loafers from loafing around there; told him that at the time he assaulted him; had seen Brownfield order and drive men from there.

Plaintiff further testified that he was humiliated by the attack as there were other people around that saw it and that he was hurt in the right breast and

in the back of his head and neck. It was some two months before he could turn his head; was also hurt in the hips by being thrown against the seat; putting the nippers on and jerking him around and hurt him badly and Brownfield had wrenched them so hard that the skin had peeled open. Plaintiff testified he was weak at the time so that anybody could shove him over with a slight push; told Brownfield he was sick; had not been drinking that night nor for sometime before, although was accustomed to drinking to some extent. The train came along about five o'clock in the morning and when it came plaintiff went out and got on the train.

On cross-examination plaintiff testified that he was a kind of doctor; had kept steam baths and was doctoring people by that means. While he had at one time drank a good deal, had not been drinking to amount to anything for over a year and had not been drinking that night. About nine years before he had been arrested for fighting and fined; that was the only time he had ever been convicted of anything although in other difficulties; had heard Brownfield was a policeman or deputy marshal but did not know it.

This is substantially the testimony of plaintiff.

A witness for plaintiff testified that he did not know what Brownfield's duties were under his employment by the railroad company but he had seen him ordering people out of the waiting room at different times, causing them to stop smoking and enforcing the company's rules about the station, which rules were posted up in the station, and had seen him call people's attention to the sign. He would say, "You see that sign there, 'No smoking allowed,' " and he enforced the rules about loafing about the waiting room.

Another witness for plaintiff testified that he knew that Brownfield was working for the defendant

railroad company; that he was watching the transfer track and was also supposed to be enforcing the rules of the railroad company about the depot and had seen him engaged in that sort of work about the time of this occurrence. Brownfield had told the witness while he was at this, that he was engaged in the discharge of his duties for the company.

Other witnesses testified that they had seen plaintiff that morning and that he was not intoxicated and that he was considerably injured in consequence of the occurrence between himself and Brownfield. There was testimony to the effect that when one of the officers of the defendant company said something to Brownfield about promoting him for his services at the station in keeping order, Brownfield said he did not care for promotion; he preferred to see his pay check raised.

The defendant Brownfield, testifying on his own behalf, that he was employed by the St. Louis & San Francisco Railroad Company as a machinist, his hours of work being from seven o'clock a. m. to 6 p. m., and that he was paid by the hour. His duties as a machinist were to repair engines, such as general overhauling, light repairs; inspected them as they came in during his hours of duty and was around the depot doing general work. He testified that the railroad company had nothing to do with his duties as a policeman. He wore a star with the words ''Deputy Marshal'' on it; never knew plaintiff until the morning of this occurrence; saw him coming out of the closet to the west of the depot about twenty feet west of the main track; went up to send a message that the engine was ready and walked around the depot and saw plaintiff then; had on his star at the time and had his billy with him and his nippers. When he met plaintiff out there asked him what he was doing. Plaintiff told him it was none of his business, saying this with an oath and Brownfield told him that it was;

Hedge v. Railroad.

that he didn't want any drunks or loafers lying around there to stop the cars with the switch engine working up and down there all the time. Afterwards plaintiff told him he was going to Caruthersville and he started to walk to the depot and fell down over the track. Brownfield lifted him up and they walked into the depot together; denied that he struck him or pushed him down; never touched him at all; he fell down and when he lifted him up plaintiff cursed and abused him and called him everything he could think of and kept striking at him all the time. This occurred in the waiting room; when plaintiff had fallen down on the ground he had abused him in a loud voice. When he told Brownfield he was going to Caruthersville, Brownfield asked him if he had a ticket. Plaintiff said, "No," but that he had "the money to buy one." Brownfield told him, "All right. go and buy it." They went into the depot together. Plaintiff kept cursing him all the time that they were going in there and after he bought the ticket he still kept cursing him and striking at him and he (Brownfield) caught plaintiff by the back of the neck and shook him and told him if he did not keep still and quit using that kind of language he would arrest him and lock him up; after he had bought the ticket he started to turn around and sit down in a seat and fell over and Brownfield told him to sit there and behave himself and he could stay as long as he wanted. Brownfield went out and left him and was gone about fifteen minutes and when he came back plaintiff was walking up and down in the waiting room and told Brownfield with an oath that he was there yet. Whereupon Brownfield told him that he would not be there if he did not quit that kind of language. Plaintiff wanted to know who was going to stop it and Brownfield told him he would and plaintiff sat down in a seat and kept cursing and when Brownfield attempted to reach for the back of his coat plaintiff jerked away from him,

threw himself on the floor and said that if he (Brownfield) got him out of there he would have to carry him. Whereupon Brownfield said to him that he had something that would make him go and he put the nippers on him and took him out. When he took hold of plaintiff he was going to arrest him and lock him up and when he reached for him plaintiff jerked away and threw himself on the floor. After the nippers were put on him Brownfield got him out of the station and about forty feet away from the depot when plaintiff commenced begging, said he was seventy-two years old and that he had to go to Caruthersville to attend to a lawsuit he had; that if he was locked up he would lose his suit, so he let him loose about 200 feet away from the depot. Brownfield testified that plaintiff was drinking at the time; that he could smell whiskey on him.

On cross-examination Brownfield testified that while he was on duty around the station he inspected engines and the machine shop, did whatever was necessary; this took up about three-fourths of his time; denied that he was enforcing the company's rules around the depot; if loafers came to the depot would tell them to get out; if they smoked would tell them there was no smoking allowed and would show them the sign, which was posted in the depot; about one-fourth of his time while on duty he was at this depot and if he found loafers in there would tell them to get out. At that time was under the pay of the railroad. As special policeman did not familiarize himself with the city ordinances so that he would know what his duties were as a special policeman but was to keep the peace and make arrests of drunks and disorderlies; had arrested plaintiff for being drunk and disorderly but he was not fined for it and was not put to trial and preferred no charges against him and did not put him under bond. He had put plaintiff under arrest but he begged off.

A witness for defendant testified that he was in the depot on the night in question; that he saw Brownfield bring plaintiff into the station and plaintiff bought a ticket to Caruthersville; was talking rather loud and boisterous and Brownfield told him that if he didn't hush he would put him out. Plaintiff told him he would hush when he got good and ready, using an oath. Brownfield told him if he did not hush talking so loud he would lock him up. When he first saw them Brownfield had hold of plaintiff and was bringing him toward the ticket window. and when he heard the noise of the door opening, witness raised the ticket window; they were both talking rather loud. Plaintiff was not noisy when he was getting the ticket. Brownfield said to him, "Sit down there or I will lock you up." Plaintiff said he did not think he would, and Brownfield took hold of him to make him sit down. Plaintiff "sulked" on him and fell down or laid down on the floor and Brownfield caught hold of him and took him out of the station.

On cross-examination this witness testified that plaintiff was quiet when he was purchasing his ticket and while he was buying it Brownfield took hold of him with his left hand and pushed him against the window sill; did not hit him, just pushed him and it was while he was buying the ticket that Brownfield gave him the shove; when he next saw plaintiff, Brownfield was getting him up off of the floor; did not know how he got down on the floor; did not know whether Brownfield knocked him down; did not see him do it but saw plaintiff down on the floor and saw Brownfield get the old man up off the floor; did not see him put the nippers on him. Brownfield did not exactly drag plaintiff out of the depot; lifted him up and pushed him out; had hold of him with both hands. This witness was the ticket agent at Hayti and testified that Brownfield was also working for the defendant railroad company at that time and was the night

foreman of the roundhouse; his duties did not require him to stay around the depot and enforce the railroad company's orders concerning keeping loafers out of the waiting room and not allowing smoking or spitting on the floor; his duties were to repair engines and he had no other duties that witness knew of but did not know what all his duties were. He was around the depot every night when he was special policeman; before that time he would come up sometimes for information about the engines and want to know about the railroad business there; had seen him enforcing the company's orders around the depot; had seen him tell people to quit smoking and ask them if they had tickets. There was no loafing allowed around the station. There were posters up in the station, reading "No smoking or loafing allowed in here;" did not know whether it was part of Brownfield's duty to enforce these rules but he knew that he worked for defendant railroad; that Brownfield had done that. Brownfield was on the railroad pay roll as roundhouse foreman but he was not at the roundhouse all the time; he worked nights and while not at the depot all the time was there occasionally.

Another witness for defendants, the express agent at the station, testified to what took place in the station that day; his account of the occurrence did not greatly vary from that of the former witness.

At the close of all the testimony the defendant company offered a demurrer to the effect that under the pleadings and evidence in the case plaintiff was not entitled to recover against it. The court refused this, that defendant duly excepting, whereupon, at the request of plaintiff, the court gave three instructions, to the giving of each of which the company defendant duly excepted. On its part that defendant asked six instructions, all of which were given by the court. The defendant Brownfield asked no instructions and has preserved no exceptions. The jury returned a ver-

dict in favor of plaintiff and against both defendants for $500 actual and $2500 punitive damages. Whereupon the defendant company filed its motions for new trial and in arrest, both of which were overruled, exceptions saved and appeal duly perfected to this court by the railroad company.

REYNOLDS, P. J. (after stating the facts).—Five errors are assigned here by appellant. First, that the demurrer asked at the close of all the testimony should have been given. Second, third and fourth, that the three instructions given at the instance of plaintiff were erroneous. Fifth, that the verdict is excessive and bears no relation to the injury sustained and that it is grossly excessive in respect to punitive damages.

We see no particular benefit in setting out the instructions given at the instance of the respective parties. It is sufficient to say of those given for plaintiff that in so far as they omitted to specifically set out the duties of Brownfield and to specifically instruct the jury as to what acts it was necessary to find as evidence of the fact that Brownfield was not only a special policeman but also an agent of the defendant railroad company, having duties in connection with the enforcement of the rules of the defendant company in and about the station, that these are more matters of nondirection than of misdirection. Considering the instructions as a whole and in connection with those given for appellant, we think they covered the case correctly. On the facts in the case, as we have briefly summarized them, it is apparent that it was a case for the determination of the jury, subject to the approval of the trial court. This is assuming that the jury was properly instructed as to the law, and we think that it was. We find no reversible error in the three instructions given at the instance of plaintiff.

Nor can we agree that the verdict is excessive either as to actual or punitive damages. Assuming that the jury believed the testimony of the plaintiff as to the extent of his injuries, and the suffering consequent on them, the actual damages are not excessive and, if the jury believed the testimony of plaintiff and of his witnesses as to the character of the assault, as they had a right to do, the punitive damages cannot be said to be excessive. There was evidence in the case tending to show that this was a brutal and unwarranted assault by an employee of the railroad company, who, while an inspector of locomotives, engines and machinery and the condition of trains, that is a mechanic, was in point of fact also charged with and engaged in the duty of enforcing the rules of the railroad company in the preservation of order around the station. The impression which the testimony makes upon us is that the official character of a special policeman with which the defendant Brownfield was clothed, was more nominal than real, and entirely for the benefit of the railroad company and to secure more efficient enforcement of its rules. So the jury evidently thought. There is not a particle of evidence in the case tending to show that Brownfield considered himself or that he was considered by anyone else, as having any duties as a special policeman. It is true he was an inspecting machinist and that those duties required his presence at the station. But the evidence shows he was receiving nothing and was to receive nothing whatever by way of compensation from the city for his services as policeman save when he made arrests and a conviction was had; then he was to have the fees allowed by law, if any. The evidence shows that he never received any such fees. While there is no evidence directly showing that the railroad had procured his appointment as a special policeman, it is very evident that his duties as such special policeman were confined exclusively to the premises and the bus-

Hedge v. Railroad.

iness of the railroad company. It does not appear that he every did any duty as special policeman anywhere in Hayti than at the station of the railroad. His office as special constable was entirely for the interest and benefit of the railroad company.

It is argued by the learned counsel for appellant that it is clearly established by the evidence in the case, first, that Brownfield was a duly commissioned and acting police officer of the city of Hayti and as such charged with the duty of preserving the peace of the city and that he was especially enjoined by the city to discharge these duties at the station. There is not a particle of evidence in the case to show any ordinance of the city relating to the matter of those duties or their discharge by Brownfield. He testified that he did not know what the ordinances were, and the only orders the evidence shows he was enforcing about the station were the orders of the railroad company itself, those orders evidenced by the signs posted up in and around the depot. These were the orders of the railroad company, not ordinances of the city.

The second point made as to this matter of employment is that Brownfield at the same time was an employee of defendant in the capacity of a machinist and that his duties as such required him to inspect and repair engines moving through Hayti and necessitated his presence at the depot at frequent intervals and that no instructions were given him by defendant which required him as a part of his duties as an employee of defendant to make arrests or to discharge any of the functions of a police officer. That may be, but the evidence shows that he was discharging the duties of a watchman and this with the knowledge at least of the local agent of the company, and apparently of other officers of appellant. No one else paid him; his time from 7 p. m. to 6 a. m., belonged to the railroad company and he was paid by the hour.

His duties as policeman were incident to his duties as a mechanic. He was not made machinist because he was a policeman but was made a policeman because his duties as machinist kept him at and around the depot all night. Obviously he was clothed with police powers solely for the purposes of the railroad and for its protection and not for the protection of the general public. So the jury obviously found, and it followed, as it also found, that the railroad company was responsible for his acts in and about its premises, no matter in what capacity and in the exercise of what powers he acted. His police powers were exercised for the sole benefit of the defendant railroad; the general public got none of his assistance; he patrolled no beat outside of the railroad premises; exercised no powers elsewhere. It is evident that but for his employment by the railroad company Brownfield would not have held the appointment of a special policeman. Receiving the benefits of his services, paying him for them, the railroad company cannot escape responsibility for his acts.

On the whole case we find ample evidence to sustain the verdict of the jury and no reversible error to the prejudice of this defendant in the instructions given. The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.